[Civ. No. 3420. First Appellate District, Division One.—June 22, 1920.]

## A. J. FOWLER et al., Respondents, v. H. B. THORNBERRY, Appellant.

[1] CONTRACTS — REPURCHASE OF JENNETS — BREACH — ACTION FOR DAMAGES—STIPULATION AS TO TESTIMONY—EVIDENCE.—In an action for damages for breach of a contract whereby the defendant agreed to repurchase from the plaintiffs, if the latter decided to exercise their option to sell, "the same jennets" that were originally sold by defendant to plaintiffs, a stipulation, entered into between the parties that certain witnesses would testify that they made an examination of the animals on the date fixed by the option for the resale for the purpose of determining whether or not the jennets were the same animals sold by defendant to the plaintiffs, but that it could not be determined from such examination that the animals so shown to said witnesses were the same animals as were sold by defendant to plaintiffs, relates only to the particular examination of the animals made at that time, and while such stipulation is evidence, it is not conclusive proof of its contents.

[2] ID.—TENDER OF SAME ANIMALS—COMPLIANCE WITH REPURCHASE AGREEMENT.—Where, according to the terms of such contract, the defendant agreed to repurchase "only the same jennets that were in the original purchase," the offer of the plaintiffs to return collectively the same animals received from defendant in the first instance constituted a sufficient compliance with the terms of their option for the resale, notwithstanding the inability of the plaintiffs to specify each particular animal as demanded by defendant, according to the registration certificate.

[3] ID.—IDENTITY OF ANIMALS—EVIDENCE—FINDING.—In this action for damages for breach of a contract whereby the defendant agreed to repurchase from the plaintiffs, if the latter decided to exercise their option to sell "the same jennets" that were originally sold by defendant to plaintiffs, there was sufficient evidence to justify the conclusion of the trial court that defendant had the reasonable means of identification of the animals at hand, notwithstanding the hoof-marks on the animals had become obliterated from being worn off, and that the jennets offered to the defendant were the "same identical jennets" sold to plaintiffs by defendant.

[4] ID.—SALE OF ANIMALS—POSTING OF NOTICE—APPEAL—PRESUMPTION.—In such action, the plaintiffs having proved that notices of the sale of such jennets, after defendant's refusal to repurchase the same, were posted in three public places for the required

time, it will be presumed, on appeal, in the absence of evidence
to the contrary, that the places where such notices were posted
were within the township in which the sale took place.

APPEAL from a judgment of the Superior Court of
Kern County. Howard A. Peairs, Judge. Affirmed.

The facts are stated in the opinion of the court.

Devlin & Devlin and Edward F. Brittan for Appellant.

Kaye & Siemon for Respondents.

WASTE, P. J.—Defendant appeals from a judgment in
favor of plaintiffs for the sum of $4,603.50 and interest,
damages alleged to have been suffered by the plaintiffs
because of the failure and refusal of the defendant to accept
and pay for eight head of registered jennets.

The defendant, Thornberry, a dealer in livestock, entered
into an agreement in writing with the respondents and G. P.
Thornburg for the sale by him to them of ten head of
registered jennets, to be brought by Thornberry from
Missouri, at an agreed price of $6,000, the respondents and
Thornburg to accept such jennets as might be selected by
Thornberry as satisfactory stock, the purchase price to be
evidenced by promissory notes of different amounts. The
jennets were shipped from Missouri by appellant in a lot
containing twenty-eight head. Upon arrival at the stock-
yard at Bakersfield, ten jennets, identified by means of
certain numbers burned into one of the hoofs of each animal,
were sorted out by appellant and one of his employees, and
were delivered to and were accepted by respondents and
Thornburg. Some time later certificates of registration,
containing the pedigree of each jennet and its registration
number, were issued by the Standard Jack and Jennet
Registry of America, and were sent to respondents and
Thornburg, with a letter directing the attention to the hoof
numbers, and explaining that by reference to these numbers
and the corresponding numbers on the certificates of registra-
tion each jennet could be identified.

Subsequently certain controversies arose between the
parties regarding the qualities of the jennets for breeding
purposes, and also concerning the guaranties made by Thorn-

berry in respect to the foals that would be produced during the breeding season of 1914 and 1915. A new agreement was executed, which, after reciting that the parties desired to set aside all previous agreements, provided that the respondents and Thornburg should pay certain balances upon the promissory notes theretofore executed pursuant to the old agreement, and should sell to appellant a jack colt for the sum of $500. It was further agreed that appellant would, at the option of respondents and Thornburg and on notice, purchase the nine head of jennets (one having died), or as many as might be living and in reasonably good and sound condition, at the original purchase price of $600 per head, it being specified that this stipulation should include "only the same jennets that were in the original purchase, and not exceeding nine head." In the event respondents and Thornburg exercised their option to sell, appellant was to receive, in consideration of the agreed purchase price, one-half of the colts foaled by the jennets between the date of the new agreement and the delivery of the animals, the method of selection being specified. At the time he signed this agreement, appellant knew from "hearsay," and, no doubt, from familiarity with the industry, that the hoof-marks on the animals had become obliterated from being worn off. In due time respondents and Thornburg decided to exercise their option to sell the remaining eight head of jennets (another one having died) and so notified the appellant.

Appellant and Albert Dill, a stock-breeder, and respondent Hadlock went to respondent Fowler's ranch, near Bakersfield, for the purpose of examining the jennets. It was then discovered that three of the jennets were dead. Hadlock was unable to identify the remaining seven head. The parties then went to the office of the attorney for the respondents, who offered appellant the ten registration certificates theretofore received and demanded the sum of $4,800. Appellant declared himself ready to buy the jennets, but declined to accept them unless the respondents could identify each one, with reference to the individual registration certificate, stating that as the animals were thoroughbred, buyers would require each to be identified as the one mentioned in her registration certificate. Respondents declared they were

unable to identify the animals because the hoof-marks which were upon the jennets at the time they were delivered had become obliterated. Appellant then requested respondents to pick out the three registration certificates of the three dead jennets. Respondents were unable to do so or to identify any of the living animals as the ones described in any of the ten registration certificates. Appellant refused to accept delivery unless there was some means of identification whereby he could perpetuate the pedigree of the jennets and their progeny. Some time later the remaining seven head of jennets were sold by respondents for the total sum of $220. The present action was then commenced against appellant for recovery for his failure and refusal to accept or pay for the jennets and for damages for the value of the pasturage of the animals from the exercise of the option to the date of the sale.

The parties agree that their respective contentions may be stated as follows: Appellant contends that he agreed to purchase, at respondents' option, the same jennets which were in the original purchase contract, i. e., registered jennets, each one duly identified, and each one accompanied by its registration certificate, together with such of the progeny as he would be entitled to receive under the contract, also identified so as to permit the same to be registered. The respondents contend that they agreed to sell, at their election, the same animals they had purchased from appellant, collectively and regardless of identification or registration; that they tendered or offered to deliver the same animals and that appellant Thornberry is liable for refusing to purchase them. The principal controversy turns upon the interpretation of the repurchase clause, the question being whether or not identification of the individual animals was a necessary incident and a part of the contract. The lower court has decided that it was not and has decided in favor of the respondents' theory.

It appears that each of the registration certificates for the respective jennets contained, in addition to the numbers burned upon the hoofs, certain height, girth, bone, and hoof measurements and a statement of the age of the animal, all of which were required by the rules and regulations of the Jack and Jennet Registry Association, and the lower court

found that it would have been and was at all times possible for the appellant, or other persons skilled in such matters, to have identified each and every animal from the data given in the registration certificate, with a reasonable degree of certainty. This finding is supported by the testimony of the witness De Ganna, an employee of the appellant, called and qualified by him as an expert, by the testimony of the witness Dill, a breeder of jacks and jennets, also called and qualified as an expert by appellant, and by the testimony of appellant, who was a stock-breeder of years' standing, well versed in the details of the business. The respondents and Thornburg knew little, if anything, of such matters.

[1] Appellant contends that the respondents were estopped from availing themselves of the effect of this evidence by a stipulation entered into in connection with the proceedings for a change of place of trial of the action. It was stipulated that in the event the motion was granted, witnesses Dill and De Ganna would testify that they made an examination of the animals on the first day of August, 1917, the date fixed by the option for the resale for the purpose of determining whether or not the jennets were the same animals sold by the appellant to the respondents and "at said time, the defendant and said Albert M. Dill examined certain animals shown by the plaintiff, but that it could not be determined from said examination that the animals so shown to them were the same animals sold by defendant to plaintiffs at the time and in the manner as set forth in said complaint, and the plaintiffs also admit that it is true that it could not be determined from such examination that the animals so shown to said witness were the same animals as were sold by defendant to plaintiffs." We think, however, that the respondents' contention is correct, that a fair reading of the stipulation shows it to relate only to the particular examination of the animals made at that time, and not to any other. Moreover, the stipulation was merely to the effect that the witnesses would, if called, testify as indicated. The stipulation, therefore, became evidence, but not conclusive proof of its contents. (*Blankman* v. *Vallejo,* 15 Cal. 638, 645; *Boggs* v. *Merced Mining Co.,* 14 Cal. 279, 358.) The authorities cited by the appellant to the contrary only go to the effect that where there has been a

stipulation in the course of the trial as to the facts, made as a substitute for evidence, and the findings are contrary to the facts as stipulated, they are unsupported by the evidence. That is not this case.

[2] It would, therefore, seem that appellant's objection to receiving the animals under the terms of the option was not reasonable. The trial court was correct in concluding that the offer of the respondents to return collectively the *same* animals received from appellant in the first instance was a sufficient compliance with the terms of the option, notwithstanding the inability of the respondents to specify each particular animal as demanded by the appellant, according to the registration certificate. Appellant agreed to repurchase "the same jennets that were in the original purchase and numbers not exceeding nine." Respondents tendered certain animals and all the registration certificates they had received from appellant with the animals. [3] The court found that the jennets offered to the defendant were the "same identical jennets" sold to plaintiffs by defendant. It also found that appellant had the reasonable means of identification of the animals at hand. Both findings are supported by the evidence and conclude the controversy.

The evidence does not warrant appellant's contention that the time within which he might accept the tender of the jennets on repurchase was extended. He did, apparently, endeavor to gain some additional time within which to pay or settle after the first of August, but the respondents had given him notice of the exercise of the option long before that date, and the obligation to repurchase the animals was imposed upon him as of that date.

[4] When the respondents tendered, and appellant refused to receive, the jennets under the option of repurchase, the respondents, regarding the transaction as a sale of personal property, retained the animals in their possession in order to enforce their special lien thereon. (Civ. Code, sec. 3049.) They subsequently sold them for the sum of $220. They gave actual notice to the appellant of the time and place at which the property would be sold (Civ. Code, sec. 3002), and sold the animals in the manner and upon the notice of sale of personal property under execution. (Civ. Code, sec. 3005.) It was proved that notices of the sale were

posted in three public places for the required time, but it was not shown that any of the places were within the township in which the sale took place. Appellant maintains that the sale was void for that reason. That contention would be sound if it appeared that the notices were not posted within the township. It does not so appear, and it will be presumed that the law was obeyed in that respect as the court has found. Whether or not the sale was irregular the appellant has suffered no injury. The court found that the jennets were of the value of $220, the exact amount at which they were sold. Under the Civil Code, section 3311, subdivisions 1 and 2, the detriment caused by the breach of appellant's agreement to accept and pay for the jennets was, therefore, exactly the same whether the property was resold or not.

The judgment is affirmed.

Richards, J., and Welch, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 22, 1920, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 19, 1920.

All the Justices concurred, except Wilbur, J., and Sloane, J., who were absent.